UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE TREPPEL, Derivatively On Behalf of NORFOLK SOUTHERN CORPORATION,<br><br>Plaintiff,<br>v.<br>J. PAUL REASON et al.,<br><br>Defendants,<br><br>- and -<br><br>NORFOLK SOUTHERN CORPORATION,<br><br>Nominal Defendant. | Civil Action No. 10-1641 (JDB) |

## MEMORANDUM OPINION

Plaintiff Lawrence Treppel ("plaintiff") brings this verified shareholder derivative action against Norfolk Southern Corporation ("Norfolk Southern") and current and former members of Norfolk Southern's Board of Directors and Audit Committee (collectively, "defendants"), alleging violations of Virginia state corporate law, including breach of fiduciary duty, waste of corporate assets, and unjust enrichment. Now before the Court is defendants' motion to dismiss plaintiff's complaint for improper venue, and, in the alternative, to transfer this case to the United States District Court for the Eastern District of Virginia. Upon consideration of the parties' submissions, and for the reasons set forth below, the Court will deny defendants' motion to dismiss and grant defendants' motion to transfer. Accordingly, this case will be transferred to the Eastern District of Virginia.

-1-

## BACKGROUND

Norfolk Southern is a Virginia corporation with its principal executive offices located in Norfolk, Virginia. Compl. ¶ 24. Along with four other railroad companies, Norfolk Southern controls more than 90% of all railroad tracks in America. Id. ¶ 2. In his complaint, plaintiff alleges that Norfolk Southern's former Chief Executive Officer ("CEO") David R. Goode and its current CEO Charles W. Moorman IV participated in a series of meetings of the American Association of Railroads ("AAR"), in which representatives of several of the leading railroad companies allegedly conspired to coordinate and raise fuel surcharge prices. See id. ¶¶ 5, 11, 12.

The AAR is a private institutional body headquartered in Washington, D.C. that serves as the primary governing body of the railroad industry. See id. ¶ 3; Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [Docket Entry 30] at 1. Moorman is the current chairman of the AAR and has been a member of the organization since 2005; Goode is a former AAR member and chairman. See Compl. ¶¶ 11-12. Beginning in 2003, the AAR allegedly developed a new pricing system for railroad services that allowed participating railroads to charge artificially high fuel surcharge prices. See Compl. ¶¶ 43-46. This supposed coordination of railroad fuel surcharges among Norfolk Southern and its competitors -- orchestrated through their membership in the AAR -- is alleged to have continued through 2007. Id. ¶ 4.

From 2003 through 2007, the Norfolk Southern Board of Directors met on thirty occasions. See Defs.' Mot. to Dismiss ("Defs.' Mot.") [Docket Entry 27], Ex. 1, Aff. of Howard D. McFadden ("McFadden Aff.") ¶ 3. Twenty-one of those meetings occurred in the Eastern District of Virginia, and none of the meetings took place in the District of Columbia. See id. ¶¶ 3-4. Also during this time period, Norfolk Southern's Audit Committee met on several occasions

in the Eastern District of Virginia, but never in the District of Columbia. Id. ¶ 5. The Norfolk Southern Board of Directors is alleged to have approved of the AAR fuel surcharge arrangement at some point during its meetings. See Compl. ¶ 5 (noting that the Board "ratified" the agreements made by Moorman and Goode with Norfolk Southern's competitors at the AAR).

Norfolk Southern made significant profits from its alleged price fixing arrangement, which prompted the filing of at least thirteen different antitrust class actions against the company. See Compl. ¶¶ 47-48, 53; see also Pl.'s Opp'n at 2. On November 6, 2007, these separate antitrust actions were coordinated and consolidated in the District of Columbia by the Judicial Panel on Multidistrict Litigation ("JPML"). Compl. ¶ 53. Following consolidation by the JPML, an amended class action complaint was filed in the District of Columbia charging Norfolk Southern and several of its competitors with price fixing in violation of § 1 of the Sherman Act. See Pl.'s Opp'n at 2-3; see also Consol. Am. Class Action Compl. ("Class Action Compl."), In re Rail Freight Fuel Surcharge Antitrust Litigation, Misc. No. 07-489 (D.D.C. filed Apr. 15, 2008). None of Norfolk Southern's officers or directors were individually named as defendants in the consolidated antitrust class action. See Class Action Compl.; see also Defs.' Mot. at 3.

On September 28, 2010, plaintiff, a California citizen and Norfolk Southern shareholder, filed this shareholder derivative suit on behalf of Norfolk Southern against the company and thirteen of its current and former executives, alleging breach of fiduciary duty, waste of corporate assets, and unjust enrichment. Compl. ¶¶ 1, 10, 57. In his complaint, plaintiff contends that the company's agreement to coordinate fuel surcharge prices with its competitors has "irreparably damaged Norfolk Southern's corporate image and goodwill" and forced the company to spend significant funds "investigating and defending" against the class action. Id. ¶ 55. The thirteen

individual defendants named in plaintiff's complaint include Moorman and Goode, as well as other Norfolk Southern directors and Audit Committee members.  Id. ¶¶ 11-23.  Of the thirteen individuals named, four are citizens of Virginia, and one is a citizen of Washington, D.C.  Id.

Along with his complaint, plaintiff filed a "Notice of Designation of Related Civil Cases" pursuant to Local Civil Rule 40.5,[1] in which he noted that his case was related to the consolidated antitrust class action pending in this Court before Judge Friedman.  See Notice of Related Case [Docket Entry 2].  Accordingly, plaintiff's case was initially assigned to Judge Friedman, but was reassigned to the undersigned judge on December 7, 2010.  See Notice of Reassignment [Docket Entry 25].  Ten days later, defendants filed this motion to dismiss for improper venue, or, in the alternative, for transfer to the Eastern District of Virginia.  Id.

Defendant challenges venue on two grounds.  First, he argues that this case should be dismissed because the District of Columbia is not a proper venue pursuant to 28 U.S.C. § 1391(a).  Second, defendant argues that even if venue in the District of Columbia is proper, the Court should still exercise its discretionary authority to transfer this case to the Eastern District of Virginia for the convenience of the parties and the witnesses and "in the interest of justice."  See 28 U.S.C. § 1404(a).  The Court will address each of these arguments in turn.

## DISCUSSION

**I.     Venue Under 28 U.S.C. § 1391(a)(2)**

Defendant first argues that venue is not proper in the District of Columbia and that this case should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(3).  When a

---

[1] Local Civil Rule 40.5(c)(1) provides that "[w]here the existence of a related case in this court is noted at the time the indictment is returned or the complaint is filed, the Clerk shall assign the new case to the judge to whom the oldest related case is assigned."  D.C. Local Civ. Rule 40.5.

plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); see also Fed. R. Civ. P. 12(b)(3). A plaintiff bringing suit in federal court bears the burden of showing that venue is proper, Varma v. Gutierrez, 421 F. Supp. 2d 110, 113 (D.D.C. 2006), and, "[i]n considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor," Cooper v. Farmers New Century Ins. Co., 593 F. Supp. 2d 14, 18 (D.D.C. 2008) (quoting Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)).

Where, as here, subject-matter jurisdiction is based solely on diversity of citizenship,[2] 28 U.S.C. § 1391(a) provides that venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)(1)-(3).

In this case, venue cannot lie under section 1391(a)(1) because defendants reside in eight different states. See Compl. ¶¶ 11-24. Moreover, section 1391(a)(3) provides no foundation for venue in the District of Columbia, because it is only applicable when "there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). Plaintiff does not refute

---

[2] Subject-matter jurisdiction over plaintiff's claim is founded on diversity of citizenship: plaintiff is a citizen of California, and defendants are citizens of Virginia, Pennsylvania, New York, the District of Columbia, Missouri, Georgia, Florida, and Connecticut. Moreover, the amount in controversy in this case exceeds $75,000. See 28 U.S.C. § 1332(a)(1); Compl. ¶¶ 7, 10-24.

that this case could have been brought in the Eastern District of Virginia. Indeed, the Eastern District of Virginia is where most of the "events or omissions giving rise to the claims occurred." Norfolk Southern is headquartered in the Eastern District of Virginia and the majority of the company's Board meetings during the relevant time-frame took place in the Eastern District of Virginia. See Compl. ¶ 24; McFadden Aff. ¶ 3. The Eastern District of Virginia also would have personal jurisdiction over defendants. See James v. Verizon Servs. Corp., 639 F. Supp. 2d 9, 15 (D.D.C. 2009) (explaining that a court considering transfer must "ensure that the defendants are subject to personal jurisdiction in the transferee forum"); Va. Code Ann. § 8.01-328.1 (stating that "[a] court may exercise personal jurisdiction over a person . . . [t]ransacting any business in this Commonwealth"). Because there is at least one other district in which this action could have been brought, plaintiff's argument supporting venue must rest on 28 U.S.C. § 1391(a)(2).

Plaintiff, however, seeks to evade the requirements of 28 U.S.C. § 1391(a)(2) by emphasizing the relationship between this case and the consolidated antitrust class action currently pending in this Court. According to plaintiff, venue is proper in the District of Columbia because his shareholder derivative claim is "related" to the antitrust cases that were consolidated by the JPML Transfer Order, which "ordered that transactions arising out of substantially similar facts be centralized in this district." See Compl. ¶ 9; see also In re Rail Freight Fuel Surcharge Antitrust Litigation, 528 F. Supp. 2d 1358, 1359 (J.P.M.L. 2007). But the Transfer Order only compels the consolidation of the thirteen antitrust actions then-pending in the District of Columbia or in other federal district courts. See In re Rail Freight Fuel Surcharge Antitrust Litigation, 528 F. Supp. 2d at 1359. Nothing in the Order purports to require the coordination or consolidation of all future claims against Norfolk Southern involving

common questions of fact. And despite plaintiff's contention that "the MDL Panel already found venue proper in the District of Colombia [sic]" for the "related" fuel surcharge antitrust litigation, see Pl.'s Opp'n at 7, it is well-established that in considering transfer under 28 U.S.C. § 1407, the JPML "is not encumbered by considerations of venue," see In re Falstaff Brewing Corp. Antitrust Litigation, 434 F. Supp. 1224, 1229 (J.P.M.L. 1977). In other words, the JPML Transfer Order does not imply any finding by the JPML that "a substantial part of the events or omissions" giving rise to the fuel surcharge antitrust litigation occurred in this district -- much less a finding that a "substantial part of the events or omissions" giving rise to plaintiff's shareholder derivative claim occurred here. Hence, irrespective of any alleged "relation" between this case and the antitrust litigation pending here, venue is only proper if plaintiff's claims meet the usual statutory requirements of 28 U.S.C. § 1391(a)(2).

Plaintiff argues that a substantial part of the events giving rise to his claims did, in fact, occur in the District of Columbia because it is through the Washington, D.C.-based AAR that Norfolk Southern and its competitors allegedly "coordinated . . . to charge similar fuel surcharges and increase the charges in unison." Compl. ¶¶ 3, 11, 12. Because the AAR is headquartered in the District of Columbia, plaintiff maintains that "[a]t the very least, it can be inferred that certain defendants and other top executives met regularly for AAR meetings in the District of Columbia, in furtherance of their scheme." See Pl.'s Opp'n at 6-7.

Defendants do not dispute that Moorman and Goode may have attended AAR meetings in the District of Columbia or that these AAR meetings may have at least some relevance to plaintiff's claims; rather, they argue that a more substantial portion of the events giving rise to plaintiff's shareholder derivative action occurred in the Eastern District of Virginia. See Defs.'

Reply [Docket Entry 31] at 2.  True enough.  But "[n]othing in section [1391(a)(2)] mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred . . . .  To the contrary, a plaintiff need only show that '*a* substantial *part* of the events or omissions giving rise to the claim occurred' in that district."  Modaressi v. Vedadi, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) (citing 28 U.S.C. § 1391 (emphasis added)).  In other words, section 1391(a)(2) allows for the possibility that a plaintiff will have a choice of venue among multiple districts where a substantial portion of the events giving rise to his claims occurred in more than one district.  See, e.g., City of New York v. Cyco.Net, 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005) ("Venue may be proper even if a greater part of the events giving rise to a claim happened in another forum."); Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994) ("[W]e ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.").

Here, two of the named defendants allegedly attended and chaired AAR meetings in the District of Columbia, and it was supposedly at these meetings that these individuals -- on behalf of Norfolk Southern -- agreed to coordinate an increase in fuel surcharge prices with representatives from Norfolk Southern's competitors.  Viewing the complaint in the light most favorable to plaintiff, then, the Court finds that, while the most substantial portion of the relevant events giving rise to plaintiff's claims occurred in the Eastern District of Virginia, at least a substantial part of the events did, in fact, take place in this district.  Hence, the District of Columbia is a proper venue under 28 U.S.C. § 1391(a)(2) for plaintiff's claims.

## II.     Transfer Pursuant to 28 U.S.C. § 1404(a)

Even where venue is proper, a district court nonetheless "has 'broad discretion' to order

transfer" of venue pursuant to 28 U.S.C. § 1404(a). See Rosales v. United States, 477 F. Supp. 2d 213, 215 (D.D.C. 2007) (quoting In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983)). Under section 1404(a), a district court may transfer any civil action to any other district where the case originally could have been brought "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." See 28 U.S.C. § 1404(a). In order to establish the propriety of transfer, the moving party must show that (1) the plaintiff could have brought the action in the transferee district, and that (2) the convenience of parties and witnesses and the interests of justice weigh in favor of transfer. See, e.g., Lagor v. Eli Lilly & Co., Civ. A. No. 06-1967, 2007 WL 1748888, at *1 (D.D.C. June 18, 2007); Berenson v. Nat'l Fin. Servs., LLC, 319 F. Supp. 2d 1, 2 (D.D.C. 2004); Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).

As previously explained, this suit could have been brought in the Eastern District of Virginia because "a substantial part of the events or omissions giving rise to the claim occurred" in that district, see 28 U.S.C. § 1391(a)(2), and defendants would be subject to personal jurisdiction there, see Va. Code Ann. § 8.01-328.1. Therefore, the Court must consider whether defendants have satisfied their burden of showing that the convenience to the parties and witnesses and the interests of justice weigh in favor of transfer.

In evaluating motions to transfer, courts have steadfastly "refused to identify specific circumstances 'which will justify or require either grant or denial of [the transfer] remedy.'" Piper Aircraft Co. v. Reyno, 454 U.S. 235, 262 (1981) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Instead, courts "adjudicate motions to transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Specifically,

courts weigh several "public-interest" and "private-interest" factors in order to determine whether transfer is warranted in a particular case. See Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 176 (D.D.C. 2009); see also Trout Unlimited, 944 F. Supp. at 16. The private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. See Nat'l Ass'n of Home Builders, 675 F. Supp. 2d at 176 (citations omitted). The three "public-interest" factors are: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in adjudicating local controversies at home. See id. Application of these two sets of factors to plaintiff's shareholder derivative claims confirms that transfer of this case to the Eastern District of Virginia is appropriate.

### A.    Private-Interest Factors

#### 1.    *Choice of Forum*

Regarding the first and second private-interest factors -- the parties' respective choices of forum -- plaintiff has chosen to sue in the District of Columbia, while defendants prefer to litigate in the Eastern District of Virginia. As the party bringing suit, plaintiff's choice of forum is ordinarily entitled to deference. See Envtl. Def. v. U.S. Dep't of Transp., Civ. A. No. 06-2176, 2007 WL 1490478, at *7 (D.D.C. May 18, 2007) (citing Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.D.C. 1996)). Nevertheless, courts have held that "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum." Reiffen v. Microsoft Corp., 104 F. Supp. 2d 48, 53 (D.D.C. 2000). Here, plaintiff is a citizen of California, yet he has

chosen to bring suit in the District of Columbia. See Compl. ¶ 10. By contrast, defendants' chosen forum is the state where the most individual defendants reside, and where defendant Norfolk Southern is incorporated and headquartered. See Compl. ¶¶ 11-24. Accordingly, plaintiff's choice of forum is entitled to little deference.

        2.      *Where the Claim Arose*

The third private-interest factor weighs strongly in defendants' favor, as plaintiff's claims arose not in the District of Columbia but in the Eastern District of Virginia. To be sure, Moorman's and Goode's alleged participation in AAR meetings in the District of Columbia does constitute a "substantial event" for purposes of 28 U.S.C. § 1391(a)(2). But that does not mean that the District of Columbia is where plaintiff's claims "arose" for purposes of 28 U.S.C. § 1404(a). Courts in this district have held that claims "arise" under 28 U.S.C. § 1404(a) in the location where the corporate decisions underlying those claims were made, see, e.g., Berenson, 319 F. Supp. 2d at 4 (agreeing with "the defendants' position that the claims arose at the location where the corporate decisions were made"), or where most of the significant events giving rise to the claims occurred, see, e.g., Davis v. Am. Soc'y of Civil Eng'rs, 290 F. Supp. 2d 116, 123 (D.D.C. 2003) (concluding that case did not "arise" in this district where "only one of the many potential events giving rise to this action . . . occurred in the District of Columbia"). Even if Moorman and Goode conspired with Norfolk Southern's competitors to raise fuel surcharge prices during AAR meetings in Washington, D.C., it was the Board's decision to ratify this price fixing agreement that allegedly caused harm to Norfolk Southern's shareholders and thereby gave rise to this shareholder derivative action. As defendants correctly explain, "[t]his derivative suit does not focus on whether certain entities conspired to fix prices using the AAR, but whether

-11-

directors of a Virginia company, meeting outside this district, breached their fiduciary duties in managing the company's affairs." See Def.'s Reply [Docket Entry 31] at 2. Norfolk Southern is headquartered in the Eastern District of Virginia, and it held twenty-one of its thirty Board meetings during the relevant time-frame in that district. See Compl. ¶ 24; see also McFadden Aff. ¶ 3. Significantly, neither the Board nor the Audit Committee ever met in the District of Columbia at any point between 2003 and 2007. See McFadden Aff. ¶¶ 4-5. Norfolk Southern's supposed decision to "ratify" any alleged price fixing arrangement thus could not have occurred in the District of Columbia -- if such a decision were ever made, it most likely took place during the company's Board meetings in the Eastern District of Virginia.

Moreover, plaintiff has brought claims against thirteen individual defendants -- only two of whom are alleged to have attended AAR meetings in the District of Columbia. See Compl. ¶¶ 3, 5. To the extent that the remaining individual defendants breached their fiduciary duties, engaged in corporate waste, or committed unjust enrichment, those actions would have occurred during Board or Audit Committee meetings held outside this district. Because the majority of Norfolk Southern's meetings during the relevant time-frame transpired in the Eastern District of Virginia -- and because plaintiff's suit is based on actions allegedly taken (or not taken) during those meetings -- plaintiff's claims arose in the Eastern District of Virginia, not in the District of Columbia.

3.      *Convenience of the Parties and Witnesses*

The fourth and fifth private-interest factors -- the convenience of the parties and the witnesses -- do not weigh heavily in favor of either venue, given the close proximity of the District of Columbia and the Eastern District of Virginia. See, e.g., Lagor, 2007 WL 1748888, at

*4 (finding any potential inconvenience to the parties to be minimal where the two potential venues were in close proximity).  Nevertheless, to the extent that these factors point in either direction, they favor transfer to the Eastern District of Virginia.

The District of Columbia is no more convenient for plaintiff than the Eastern District of Virginia.  Plaintiff is a citizen of California, and he "made clear [his] willingness 'to forego the convenience of a geographically nearby forum'" when he filed this suit in the District of Columbia.  See id. at *4 (quoting Dean v. Eli Lilly & Co., 515 F. Supp. 2d 18, 22 (D.D.C. 2007)).  Norfolk Southern is a Virginia corporation with its principal place of business in Norfolk, Virginia, and four of the individual defendants also reside in Virginia, whereas only one of the individual defendants resides in the District of Columbia.  Compl. ¶¶ 11-24.  The Eastern District of Virginia is therefore the more convenient forum for the majority of the parties.

However, "'the most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses,' not the convenience of the parties."  Lagor, 2007 WL 1748888, at *4 (quoting Chung v. Chrysler Corp., 903 F. Supp. 160, 164 (D.D.C. 1996)).  Here, the majority of the witnesses are also more likely to reside in the Eastern District of Virginia, since the witnesses will probably be current and former employees of Norfolk Southern, which is a Virginia-based company.  See Defs.' Mot. at 17.  But neither of the parties have argued that any potential witnesses would be unavailable to give live trial testimony if the case were to be heard in the District of Columbia.  See Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 33 n.5 (D.D.C. 2008) (noting that the significance of this factor is increased where "important witnesses may actually be unavailable to give live trial testimony in one of the districts").  Therefore, while the Eastern District of Virginia would likely be somewhat more convenient for more witnesses,

the close proximity of the two jurisdictions and the ability of witnesses to appear and give testimony in both venues means that this factor weighs only slightly in favor of transfer.

    4.    *Access to Sources of Proof*

Turning to the last private-interest consideration -- the difference between the two venues with respect to access to sources of proof -- this, too, does not weigh heavily in favor of either forum. Defendant correctly points out that because Norfolk Southern's corporate headquarters is located in the Eastern District of Virginia, the bulk of its corporate records, meeting minutes, and company memoranda are likely to be found there. However, "technological advances have significantly reduced the weight of the ease-of-access-to-proof factor." Nat'l R.R. Corp. v. R & R Visual, Inc., Civ. A. No. 05-822, 2007 WL 2071652, at *6 (D.D.C. July 19, 2007). The importance of this factor is also lessened where, as here, the two potential districts are in close proximity. Nevertheless, to the extent that this factor weighs in favor of either forum, it too points towards transfer to the Eastern District of Virginia.

    **B.    Public-Interest Factors**

Although the balance of the private-interest factors thus weighs in favor of transfer, it is arguable that consideration of the private-interest factors alone would not be sufficient to "overcome the presumption in favor of plaintiff's choice of forum," given the close proximity between the two venues. See, e.g., Modaressi, 441 F. Supp. 2d at 57 n.7 (finding that the balance of private-interest and public-interest factors was not sufficient to warrant transfer, and noting that "[t]he geographic distance between this Court and those of the District of Maryland is far too small to present anything more than minor practical difficulties for the parties or their witnesses"). But where two potential venues are in close proximity, "public, rather than private,

interest factors predominate" in the transfer analysis. See Hartley v. Dombrowski, 744 F. Supp. 2d 328, 340 (D.D.C. 2010) (citing Medlantic Long Term Care Corp. v. Smith, 791 A.2d 25, 31 (D.C. 2002) ("Where the plaintiff's choice of forum is between the District of Columbia and one of the counties in the Washington, D.C. metropolitan area . . . the public interest factors predominate for the obvious reason that the relative ease or difficulty in getting to a D.C. court and a metropolitan court outside D.C. is usually the same.")). And here, examination of the relevant public-interest factors makes clear that transfer is warranted.

    1.    *Familiarity with the Governing Laws*

Regarding the first public-interest factor -- the transferee court's familiarity with the governing laws -- it is well-settled that the public interest is "best served by having a case decided by the federal court in the state whose laws govern the interests at stake." Trout Unlimited, 944 F. Supp. at 19. Neither party contends that this case will be governed by anything other than Virginia state law. See Compl. ¶ 1 ("This action seeks to remedy defendants' violations of state law . . . .") (emphasis added); Defs.' Mot. at 12 ("This action will be governed by Virginia law."). Moreover, this case will likely involve the interpretation and application of Virginia-specific procedural rules for shareholder derivative actions. See Va. Code. Ann. § 13.1-672.1. These considerations point strongly in favor of the Eastern District of Virginia as the appropriate forum for hearing this case.

Plaintiff counters by noting that "the District of Columbia *routinely* hears derivative cases involving corporations organized under the laws of other states." Pl.'s Opp'n at 13. That is undoubtedly true, but the proper analysis of this public interest factor focuses on the transferee court's familiarity with the governing laws, not on the transferor court's ability to apply those

laws. See, e.g., Trout Unlimited, 944 F. Supp. at 16, 19. Hence, courts in this district often transfer cases to the Eastern District of Virginia where the cases involve claims arising under Virginia law, despite this Court's ability to apply Virginia law. See, e.g., Parkridge 6, LLC v. U.S. Dep't of Trans., Civ. A. No. 09-01478, 2009 WL 3720060, at *4 (D.D.C. Nov. 9, 2009) (finding that transfer to the Eastern District of Virginia was appropriate where twelve of the fifteen counts in the complaint arose under Virginia law). Here, there are no federal statutes or regulations at issue, and the case will be governed entirely by Virginia corporate law, making the Eastern District of Virginia the more appropriate venue to hear plaintiff's claims.

  2. *Relative Congestion of the Courts*

A comparison of the relative docket congestion in the District of Columbia and the Eastern District of Virginia also supports transfer. The D.C. Circuit has explained that while "congestion alone is not sufficient reason to transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered" by district courts in the motion to transfer analysis. See Starnes v. McGuire, 512 F.2d 918, 932 (D.C. Cir. 1974). Here, the Eastern District of Virginia's court calendar is far less congested than that of the District of Columbia. The median time interval from filing to disposition of civil cases in the District of Columbia was 8.4 months for the twelve-month time period ending March 31, 2010, while the median time interval for the Eastern District of Virginia was 4.8 months during the same period. See Table C-5, U.S. District Courts – Median Time Intervals, available at http://www.uscourts.gov/Statistics/ FederalJudicialCaseloadStatistics2010/aspx. This Court has previously granted motions to transfer from the District of Columbia to the Eastern District of Virginia based, in part, on a difference in docket congestion between the two districts. See, e.g., Parkridge, 2009 WL

3720060, at *4 (finding transfer warranted, in part, because "the median time of cases proceeding to trial in this District is thirty-six months, while the median time in the Eastern District of Virginia is 10.6 months). The interest in judicial efficiency therefore weighs in favor of transfer.

    3.    *Local Interest*

Finally, the Eastern District of Virginia has a strong interest in having plaintiff's claims "resolved in the locale where they arise." Trout Unlimited, 944 F. Supp. at 19. Other courts in this district have looked at where "[a] clear majority of the operative events took place" in order to determine where a case should be adjudicated. See id. As previously explained, the majority of the corporate meetings and decisions relating to plaintiff's shareholder derivative claims occurred in the Eastern District of Virginia, where Norfolk Southern is based. See Defs.' Mot. at 3. Because this case involves claims under Virginia law, brought on behalf of a Virginia corporation with its headquarters in Virginia, and because plaintiff's claims are based on corporate action that was most likely taken by defendants in Virginia, the Court finds that transfer to the Eastern District of Virginia is also supported by the local interest in having this matter resolved in a court in Virginia.

## CONCLUSION

For the foregoing reasons, the Court will deny defendants' motion to dismiss for improper venue under Rule 12(b)(3) but grant defendants' motion to transfer this action to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). A separate Order accompanies this Memorandum Opinion.

                          /s/ John D. Bates
                           JOHN D. BATES
                        United States District Judge

Dated: June 27, 2011